ANNE MILGRAM
ATTORNEY GENERAL OF NEW JERSEY
R.J. Hughes Justice Complex
25 Market Street
P.O. Box 093
Trenton, NJ 08625-0093
Attorney Defendants/Counterclaimants/Third–Party Plaintiffs

By:    Kevin P. Auerbacher (KA 9707)
       Jung W. Kim
       Deputy Attorneys General
       (609) 292-6945

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| THE NEW YORK, SUSQUEHANNA AND WESTERN RAILWAY CORPORATION, | : | Civil Action No. 05–4010 (KSH) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| LISA JACKSON, in her official capacity as Commissioner of the New Jersey Department of Environmental Protection, NEW JERSEY MEADOWLANDS COMMISSION, et al., | : | **JUDICIAL CONSENT ORDER TERMINATING LITIGATION** |
| | : | |
| Defendants/Counterclaimants/ Third–Party Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| MHF LOGISTICAL SOLUTIONS, INC., et al., | : | |
| | : | |
| Third–Party Defendants, | : | |
| | : | |
| v. | : | |
| | : | |
| SLANE RAIL TRANSPORT, INC., | : | |
| | : | |
| Fourth–Party Plaintiff, | : | |

WHEREAS, Plaintiff, The New York, Susquehanna and Western Railway Corporation ("NYS&W"), a New Jersey corporation with offices at One Railroad Avenue, Cooperstown, New York 13326, is an interstate rail carrier and owns the property located at 5800 West Side Avenue (partial sections of Block 453A, Lots 5C, 5A 1, 7C and part of Block 481, Lot 1), North Bergen Township, Hudson County, New Jersey (the "5800 West Side Property") upon which it operates a truck to rail facility (the "5800 West Side Facility").

WHEREAS, Susquehanna Bulk Systems Inc. ("SBSI"), a Third Party Defendant in this matter, is a wholly owned subsidiary of NYS&W.

WHEREAS, MHF Logistical Solutions, Inc. ("MHF"), a Third Party Defendant in this matter, is a Delaware corporation with offices located at 800 Cranberry Woods Drive, Suite 450, Cranberry Township, Pennsylvania 16066.

WHEREAS, X-Press Rail Transfer, LLC d/b/a 94th Street Rail Transfer, LLC ("94th Street Rail Transfer"), a Third Party Defendant in this matter, is a limited liability company formed in New Jersey with offices located at 25-31 94th Street, North Bergen, New Jersey.

WHEREAS, Millenium Resource Recovery, Ltd. ("Millenium"), previously dismissed as a Defendant in this matter, is a New Jersey corporation and owns property located at 25-31 94th Street (Block 480, Lots 1, 1C, 2, 6, 7, 8 and 9), North Bergen Township, Hudson County, New Jersey (the "94th St. Property") upon which, together with property owned by NYS&W, NYS&W operates a truck to rail facility (the "94th St. Facility").

WHEREAS, Millenium leases a portion of the 94th St. Property to NYS&W, pursuant to a lease agreement between Millenium and NYS&W dated June 1, 2004 (the "94th St. Lease"), and provides a license to another portion of the 94th St. Property to NYS&W.

2

WHEREAS, NYS&W also represents that it operates truck to rail facilities on properties at 83rd Street (the "83rd Street Facility") and 3700 West Side Avenue/3440 Paterson Plank Road (the "Paterson Plank Road Facility") in the Township of North Bergen and at 4th Avenue (the "4th Avenue Facility") in the City of Paterson. The 94th St. Facility, the 5800 West Side Facility, the 83rd Street Facility, the Paterson Plank Road Facility and the 4th Avenue Facility are collectively referred to as the "Facilities" and when referred to generally as a single facility, "Facility".

WHEREAS, pursuant to a series of agreements between NYS&W and MHF entered into between 2003 and 2005 (referred to hereafter collectively as the "MHF Contract"), the 5800 West Side Facility was constructed and is operating on the 5800 West Side Property and handles solid and hazardous waste.

WHEREAS, SBSI loads non-hazardous solid waste and hazardous solid waste into rail cars at the 5800 West Side Facility.

WHEREAS, pursuant to an agreement entered into between NYS&W and 94th Street Rail Transfer on or about July 8, 2004, captioned "Facility Capacity and Loading Agreement" (referred to hereafter as the "94th St. Contract"), the 94th St. Facility is operating on the 94th St. Property and handles solid waste.

WHEREAS, Total Waste Services, Inc. ("Total Waste") is a New Jersey corporation and proposes to take over operations of the 94th St. Facility from NYS&W. Total Waste is not a party to the above-captioned litigation and no claims have been asserted by any parties against it; Total Waste signs this JCO in order to implement its proposal to take over operations of the 94th St. Facility from NYS&W.

3

WHEREAS, Scott Excavating, L.L.C. ("Scott Excavating"), a New Jersey limited liability company, pursuant to an agreement entered into with NYS&W dated on or about April 1, 2004, captioned "Railroad Car Loading Agreement", loads materials at the 94th St. Facility.

WHEREAS, on or about July 26, 2005, the New Jersey Department of Environmental Protection ("DEP" or "Department") issued an administrative order and notice of civil administrative penalty assessment ("AONOCAPA") (EA ID #: PEA050002 - U936) against NYS&W for alleged violations of certain solid waste regulations codified at N.J.A.C. 7:26-2D.1 (the "2D Regulations") seeking, among other things, compliance with those regulations and $2,500,000 in penalties for those alleged violations.

WHEREAS, on or about August 16, 2005, NYS&W filed the instant action against the Commissioner of the Department (also referred to as "DEP" or the "Department"), the New Jersey Meadowlands Commission, the individual members of the Commission acting in their official capacity, and the Executive Director of the New Jersey Meadowlands Commission (hereafter collectively referred to as the "NJMC") (DEP and the NJMC are hereafter sometimes collectively referred to as the "State"), seeking, among other things, to enjoin application of the 2D Regulations to five truck to rail facilities located in North Bergen, including the 94th St. Facility and the 5800 West Side Facility, alleging, among other things, that the 2D Regulations were preempted by the Interstate Commerce Commission Termination Act ("ICCTA"), 49 U.S.C. §§ 10101 et seq.

WHEREAS, on or about February 27, 2006, the State filed a First Amended Counterclaim and First Amended Third Party Complaint ("First Amended Counterclaim") against, among others, plaintiff NYS&W and third party defendants MHF, 94th Street Rail

4

Transfer, Millenium, and Scott Excavating, seeking injunctive relief against them for alleged violations of various provisions of or arising under the Solid Waste Management Act, N.J.S.A. 13:1E-1 et seq. ("SWMA") and the Hackensack Meadowlands Reclamation and Development Act, N.J.S.A. 13:17-1 et seq. ("HMRDA"), and against plaintiff NYS&W to enforce a Stipulation of Settlement ("Stipulation") that had been adopted as a final agency order by the Hackensack Meadowlands Development Commission (now the NJMC). The instant litigation, including all claims among, between and against the State, NYS&W, MHF, 94th Street Rail Transfer, Millenium, and Scott Excavating is referred to as the "Lawsuit".

WHEREAS, the boundaries and areal extent of the 5800 West Side Facility and 94th St. Facility are defined by the figures contained within Exhibits A (the 5800 West Side Facility) and B (the 94th St. Facility) to this Judicial Consent Order ("JCO") and are incorporated by reference herein.

WHEREAS, Total Waste, with the consent of NYS&W, as expressed in, and limited by, this JCO, has proposed assuming the responsibility for operating the 94th St. Facility and constructing modifications and enhancements to the existing truck to rail operations, to the extent necessary.

WHEREAS, NYS&W intends to continue operations at the 5800 West Side Facility and has proposed the following modifications and enhancements to the 5800 West Side Facility to handle solid waste in accordance with the 2D Regulations as stated herein and to handle hazardous waste pursuant to N.J.A.C. 7:26G-7.4(g) (the "5800 West Side Improvements"): (i) enclosure of the delivery vehicle unloading operations within the building, (ii) expansion of the existing building to provide that railcars being loaded are within the building, (iii) ventilation system improvements within the building consisting of installation of a ventilation system,

5

installation of additional barriers to contain and control facility air movement (the "Air Handling System"), and (iv) rinse water management improvements to collect and manage wastewater and run off from the ramp and tipping hopper and rail bed improvement within the building.  General plans and specifications for the 5800 West Side Improvements are contained in Exhibit C of this JCO and incorporated by reference herein.

WHEREAS, for the 94th St. Facility, the proposed modifications and enhancements to operate as a solid waste facility are:  (i) installation and implementation of a wastewater and stormwater collection system, (ii) installation and implementation of an air pollution control system, and (iii) installation of a second truck scale (the "94th St. Improvements").

WHEREAS, NYS&W has proposed settling, without any admission of liability, its dispute with DEP concerning the alleged preemption of the 2D Regulations with respect to the Facilities and any truck to rail facility handling solid or hazardous waste for storage, transportation or disposal to be operated in the future by NYS&W.

WHEREAS, in the event that Total Waste operates the 94th St. Facility, by accepting solid waste for storage, transportation, or disposal, such facility will be a "solid waste facility" as defined in the SWMA and will lie in the Hackensack Meadowlands District ("HMD"), which is a solid waste management planning district, and in connection therewith, Total Waste will be engaged in the collection and/or disposal of solid waste.

WHEREAS, pursuant to the SWMA's implementing regulations, any solid waste facility, other than one operated by a rail carrier or a person acting on its behalf, as set forth in N.J.A.C. 7:26-2.1(a), must be included in the solid waste management plan of the solid waste management district within which it is located ("Plan Inclusion"); obtain solid waste facility registration and engineering design approval and approval of a certification of construction in accordance with

6

the SWMA and its operational standards and implementing regulations (hereafter sometimes referred to as a "Permit"); obtain A-901 approval pursuant to N.J.S.A. 13:1E-126 et seq. (hereafter sometimes referred to as "A-901 Approval") to operate the proposed solid waste facility; and obtain a Certificate of Public Convenience and Necessity ("CPCN") pursuant to N.J.S.A. 48:13A-6.

WHEREAS, a person other than a rail carrier, or a person acting on its behalf, involved in the shipment of hazardous waste through a facility authorized to store hazardous waste for up to ten (10) days pursuant to N.J.A.C. 7:26G-7.4 (hereinafter referred to as a "10 day facility") is required to obtain a hazardous waste transporter registration and/or a hazardous waste broker's license, and as a prerequisite to issuance of such a registration and license, A-901 Approval.

WHEREAS, NYS&W and MHF have represented that as to the 5800 West Side Facility, MHF is only arranging for the delivery of solid and hazardous waste to and shipment out of the 5800 West Side Facility, which constitutes the brokering of solid and hazardous waste (hereinafter referred to as "solid and hazardous waste brokerage activities");

WHEREAS, the parties to this JCO (the State, NYS&W, MHF, 94th Street Rail Transfer, Millenium, Scott Excavating and Total Waste) desire to resolve the Lawsuit through this JCO by: (1) resolving the dispute between DEP and NYS&W regarding the 2D Regulations, (2) resolving the dispute between the NJMC and NYS&W regarding the Stipulation of Settlement, (3) creating a process whereby MHF may obtain A-901 Approval and a solid and/or hazardous waste broker license for its brokerage activities ("Broker License"), (4) setting a schedule for the completion of the 5800 West Side Improvements, (5) and creating a process whereby Total Waste, the proposed operator of the 94th St. Facility with the consent of NYS&W, may seek and obtain A-901 Approval, Plan Inclusion, a Permit and a CPCN to operate

the 94th Facility as a solid waste facility under the SWMA (referred to hereinafter collectively as the "94th St. Permit").

WHEREAS, if the 94th St. Permit issues: (1) NYS&W, 94th Street Rail Transfer and Scott Excavating agree to terminate all contracts as to the 94th St. Facility, (2) NYS&W and Total Waste agree to enter into a contract covering rail transportation services that the NYS&W would provide to Total Waste either directly or indirectly through a third party, such as a rail transportation broker, (3) NYS&W, Millenium and Total Waste agree that the 94th St. Lease will be terminated and a new lease will be entered into between Total Waste and Millenium, and (4) NYS&W and Millenium agree to enter into an easement for that portion of NYS&W's property on which the 94th St. Facility is located.

WHEREAS, NYS&W, Total Waste, Scott Excavating and Millenium, and the State, desire to agree upon a timeframe for applications to be submitted by Total Waste and acted upon by DEP and NJMC for (a) the 94th St. Facility to be included in the solid waste management plan of the NJMC, (b) Total Waste to obtain a Permit from DEP for operation of the 94th St. Facility, and (c) Total Waste to obtain approval under the A-901 Program to operate the 94th St. Facility as a solid waste facility.

WHEREAS, NYS&W, MHF and the State desire to agree upon a timeframe for the 5800 West Side Improvements to be implemented and for MHF to obtain A-901 Approval and a Broker License to continue its arrangements for shipments of solid and hazardous waste.

WHEREAS, DEP and NJMC expect to enter into an Administrative Consent Order with NYS&W and New Jersey Rail Logistics, LLC ("NJRL"), an Ohio limited liability company with an office at 111 Rush Avenue, PO Box 68, Bellefontaine, OH 43311, which sets forth

8

timeframes for applications for plan inclusion, a solid waste facility permit, a CPCN, and A-901 approval for the 83rd Street Facility to be submitted NJRL and acted upon by DEP and NJMC.

WHEREAS, DEP and NJMC expect to enter into an Administrative Consent Order with NYS&W and Consolidated Environmental Waste Services, LLC d/b/a Royal Rail Services, LLC ("Royal Rail"), a New Jersey limited liability company having its principal offices at 47 Sparrowbush Road, Upper Saddle River, New Jersey 07458, which sets forth timeframes for applications for plan inclusion, a solid waste facility permit, a CPCN, and A-901 approval for the Paterson Plank Road Facility to be submitted Royal Rail and acted upon by DEP and NJMC.

WHEREAS, DEP expects to enter into an Administrative Consent Order with NYS&W and Coastal Distribution of Paterson, LLC ("Coastal"), a New Jersey corporation with an office at 30-36 4th Avenue, Paterson, NJ 07544, which sets forth timeframes for applications for plan inclusion, a solid waste facility permit, a CPCN, and A-901 approval for the 4th Avenue Facility to be submitted by Coastal and acted upon by DEP.

WHEREAS, MHF, 94th Street Rail Transfer, NYS&W, Millenium, Total Waste, Scott Excavating, and the State have agreed to settle these matters in accordance with the following terms.

**NOW, THEREFORE, ON THIS            DAY OF OCTOBER, 2008, IT IS HEREBY ORDERED AND AGREED THAT:**

**SETTLEMENT AMONG DEP, NJMC, AND NYS&W REGARDING 2D REGULATIONS, PENALTIES, AND THE STIPULATION OF SETTLEMENT**

1.      NYS&W and the NJMC hereby agree that the Stipulation remains in full force and effect and NYS&W and the NJMC agree to comply therewith. Notwithstanding the

9

foregoing, the NJMC hereby agrees that so long as the NYS&W remains materially on schedule in taking the actions listed in Exhibit D, within the times indicated in Exhibit D, which is incorporated by reference herein, NJMC will refrain from seeking to enforce the Stipulation with respect to the 94th St. Facility, the 5800 West Side Facility, the 83rd Street Facility and the Paterson Plank Road Facility. However, except as identified in Exhibit D, all disputes between NJMC and NYS&W with regard to the Stipulation as applicable to the 94th St. Facility, the 5800 West Side Facility, the 83rd Street Facility and the Paterson Plank Road Facility are settled as of the Effective Date of this JCO with no further action to be taken by the NYS&W.

2.      NYS&W and DEP agree that, subject to Paragraphs 6 and 7 below, except when the Facility or Facilities are closed, or except when the Facility or Facilities are operated by a third party pursuant to a solid waste facility permit, commencing on the Effective Date of this JCO, NYS&W shall comply in full with N.J.A.C. 7:26-2D.1 with respect to the Facilities as set forth below, or except to the extent provided below:

        a.      As to N.J.A.C. 7:26-2D.1(c)(2)(ii), NYS&W may open sealed containers of waste for inspection to ensure that the contents of the sealed container match the shipping papers.

        b.      As to N.J.A.C. 7:26-2D.1(d)1, NYS&W may keep facility doors open during operations and is not currently required to install doors over the railroad tracks. As to the 5800 West Side Facility, NYS&W shall comply with the enclosure provision of N.J.A.C. 7:26-2D.1(d)(1) as shown in Exhibit C in accordance with the schedule set forth in Paragraph 12.

        c.      As to N.J.A.C. 7:26-2D.1(d)2 and 3, NYS&W shall implement appropriate stormwater and wastewater management systems reflecting

10

the activities conducted at the Facility in accordance with the schedule set forth in Paragraphs 6 and 7, and shall, in the interim: (1) install automated fill alarms on all existing wastewater holding tanks within 30 days of the Effective Date of this JCO; (2) pump such tanks as needed but not less frequently than once every thirty (30) days; (3) maintain on site and make available to DEP inspectors all records of dates and volumes of wastewater pumped for disposal at an appropriately licensed wastewater disposal facility; (4) maintain all floor/trench drains so that they collect stormwater and/or wastewater directed to them and debris does not impede the flow of stormwater and/or wastewater into such drains; (5) replace within forty-eight (48) hours all drain grates that become damaged so as to impede the flow of stormwater and/or wastewater into such drains; (6) sweep all floor areas and driven surfaces as frequently as needed; and (7) maintain all tipping activities so that the tipped waste shall not be closer than ten (10) feet from entranceway trench drains.

d.     As to N.J.A.C. 7:26-2D.1(d)4, NYS&W is not required to empty areas where waste is deposited or stored during a 24-period but must clean all such areas within each 24-hour period.

e.     As to N.J.A.C. 7:26-2D.1(d)7 and 8, except as otherwise provided in this JCO, no dust or air contaminants shall migrate off-site in violation of N.J.A.C. 7:27-5.2(a). NYS&W shall implement an air pollution control system, in accordance with the schedule set forth in Paragraphs 6 and 7, and pending implementation of such system, shall implement the

11

following interim compliance measures: (1) maintain the condition of all paved surfaces of driveways, parking areas and tipping floors; (2) post signs reading that the vehicle speed limit is 5 MPH; (3) operate misting dust suppression systems at all times during tipping and rail car loading activities except during rain events; and (4) take those additional steps, including but not limited to suspending tipping and loading operations and closing all exterior doors that are not in use, necessary to prevent the migration of dust, odors, or air contaminants off-site in violation of N.J.A.C. 7:27-5.2(a).

f.    As to N.J.A.C. 7:26-2D.1(d)9 and N.J.A.C. 7:26-2D.1(c)(2)(v), NYS&W shall maintain or have readily available adequate water supply and firefighting equipment to extinguish any and all types of fires associated with the operations conducted at the Facility.

g.    As to N.J.A.C. 7:26-2D.1(d)14 and N.J.A.C. 7:26-2D.1(c)(2)(vii), NYS&W shall adopt administrative solutions to address any hazards presented by traffic backups or other traffic hazards on-site or on access roads to the Facility.

h.    As to N.J.A.C. 7:26-2D.1(d)17, NYS&W shall ensure that solid waste vehicles that are either exempt from registration requirements of N.J.A.C. 7:26-3.3 or which must be manually unloaded, are unloaded in the facility building only when no other tipping by other solid waste vehicles is occurring.

i.    As to N.J.A.C. 7:26-2D.1(d)18, NYS&W agrees that it will not accept asbestos and asbestos containing materials without complying with this provision.

j.    As to N.J.A.C. 7:26-2D.1(d)20 and N.J.A.C. 7:26G-7.4(g), at the 5800 West Side Facility, NYS&W shall implement the enclosure provisions of N.J.A.C. 7:26-2D.1(d)1 as shown in Exhibit C and in accordance with the schedule set forth in Paragraph 12. Operation of the 5800 West Side Facility by NYS&W shall not be deemed a violation of N.J.A.C. 7:26G-7.1 through 7.4, solely because NYS&W lacks a hazardous waste transporter license.

k.    As to N.J.A.C. 7:26-2D.1(d)22, NYS&W shall lock the existing gates and close the existing facility doors when a Facility is closed and staff is not present at the Facility, and shall consider and implement other measures as reasonably necessary to effectively control entry and exit to the Facility.

l.    As to N.J.A.C. 7:26-2D.1(d)24, NYS&W shall immediately report any release or discharge of any solid waste that would harm human health and the environment.

3.    As of the Effective Date of this JCO, except as otherwise provided herein, NYS&W withdraws its "facial" challenge to the 2D Regulations as preempted by ICCTA or the Interstate Commerce Clause, and agrees that it will not make or proffer any such "facial" challenge to the currently promulgated 2D Regulations in any future litigation with the State or any State or local agency. NYS&W reserves its right to make an "as-applied" challenge pursuant to ICCTA or the Interstate Commerce Clause, to the 2D Regulations, as currently

13

promulgated or as hereafter amended, in any future litigation or regulatory matter. NYS&W reserves its right to make a "facial" challenge to any amendment to the 2D Regulations after the date of this JCO. Except as otherwise provided herein, DEP reserves all of its rights to defend against any such challenge.

4.      NYS&W, in settlement of the AONOCAPA, agrees to pay DEP $700,000 (seven hundred thousand dollars) and NJMC $300,000 (three hundred thousand dollars) within 30 days of the Effective Date of this JCO. Such payments are made without any admission of liability and without prejudice to any position NYS&W may take in connection with this JCO or in connection with any other matter. Such payments are not the payment of a fine, penalty or monetary sanction but are a reimbursement of money expended by the State in connection with the investigation of the facilities at issue in the instant litigation. Upon receipt of said payment, DEP agrees to withdraw the AONOCAPA with prejudice and so notify the Office of Administrative Law. In addition, NYS&W will direct the escrow agent, in a form required by the escrow agent, to release from escrow and pay North Bergen the $1,000,000 (one million dollars) placed in escrow in connection with a sewer easement, within 30 days of the Effective Date of this JCO.

5.      As long as the NYS&W and any person acting on NYS&W's behalf remain in material compliance with this JCO, except as otherwise provided herein, nothing in this JCO shall prevent NYS&W and/or a person acting on its behalf from operating the Facilities in accordance with the 2D Regulations as stated in this JCO, or properly registered solid waste vehicles from bringing solid waste to a Facility. As long as the NYS&W and any person acting on NYS&W's behalf remain in material compliance with this JCO and the NYS&W remains in material compliance with the schedule of implementation of the 5800 West Side Improvements

14

pursuant to this JCO, except as otherwise provided herein, nothing in this JCO shall prevent NYS&W and/or a person acting on its behalf from operating the 5800 West Side Facility as a 10 day facility, or properly registered hazardous waste transporters from bringing hazardous waste to the 5800 West Side Facility.

     6.    As to each Facility other than the 5800 West Side Facility, should Total Waste, NJRL, Royal Rail or Coastal: (a) be denied (or otherwise not receive) the approvals necessary to operate the respective Facility as a solid waste facility, (b) withdraw from the approval process, which shall be deemed to include not entering into an ACO as set forth in the recitations above or (c) after receiving such necessary approvals to operate the respective Facility, not operate such Facility for any reason whatsoever:

        a.    As to N.J.A.C. 7:26-2D.1(d)2 and 3, NYS&W shall have six (6) months from the date of denial, the date of withdrawal or the date that NYS&W recommences operation, whichever is later, to complete any capital improvement or modification to the Facility, or take any other action necessary to achieve compliance with N.J.A.C. 7:26-2D.1(d)2 and 3. Notwithstanding the foregoing, NYS&W may, within ten (10) days of the date of such denial or non-receipt of the necessary operating approvals, such withdrawal from the approval process, or after such non-operation, notify DEP of its intention to close the respective Facility until such time as the respective Facility complies with N.J.A.C. 7:26-2D.1(d)2 and 3. Should the NYS&W, after commencing activities to comply with N.J.A.C. 7:26-2D.1(d)2 and 3, fail to meet such deadlines at the respective Facility, such Facility shall

15

be closed until such time as the respective Facility complies with N.J.A.C. 7:26-2D.1(d)2 and 3.

b.  As to N.J.A.C. 7:26-2D.1(d)7 and 8, NYS&W shall have six (6) months from the date of denial, the date of withdrawal or the date NYS&W recommences operation, whichever is later, to submit to DEP the information that would be required to be submitted by a non-rail carrier entity pursuant to the applicable requirements of the Air Pollution Control Act ("APCA"), N.J.S.A. 26:2C-1 et seq., and its implementing regulations and twelve (12) months to install the air pollution control system that would be required of a non-rail carrier entity pursuant to the APCA after DEP states in writing NYS&W's proposal is acceptable to it pursuant to the 2D Regulations. Notwithstanding the foregoing, NYS&W may within ten (10) days of the date of such denial or non-receipt of the necessary operating approvals, such withdrawal from the approval process, or after such non-operation, notify DEP of its intention to close the respective Facility until such time as the respective Facility complies with N.J.A.C. 7:26-2D.1(d)7 and 8. Should the NYS&W, after commencing activities to comply with N.J.A.C. 7:26-2D.1(d)7 and 8, fail to meet such deadlines at the respective Facility, such Facility shall be closed until such time as the respective Facility complies with N.J.A.C. 7:26-2D.1(d)7 and 8.

7.  As to the 5800 West Side Facility:

a.  As to N.J.A.C. 7:26-2D.1(d)2 and 3, NYS&W shall have ninety days from the Effective Date of this JCO to submit to DEP engineering designs, plans, and specifications for the 5800 West Side Improvements and any other capital

16

improvements or modifications to the 5800 West Side Facility necessary to achieve compliance with N.J.A.C. 7:26-2D.1(d)2 and 3. After NYS&W has received DEP's approval in writing of such engineering designs, plans, and specifications, NYS&W shall have six (6) months to complete the approved 5800 West Side Improvements and other necessary capital improvements or modifications, if any, to the 5800 West Side Facility. Notwithstanding the foregoing, NYS&W may, within ten (10) days of the Effective Date of this JCO, notify DEP of its intention to close the 5800 West Side Facility until such time as the 5800 West Side Facility complies with N.J.A.C. 7:26-2D.1(d)2 and 3. Should the NYS&W, after commencing activities to comply with N.J.A.C. 7:26-2D.1(d)2 and 3, fail to meet such deadlines at 5800 West Side Facility, such Facility shall be closed until such time as the 5800 West Side Facility complies with N.J.A.C. 7:26-2D.1(d)2 and 3.

b. As to N.J.A.C. 7:26-2D.1(d)7 and 8, NYS&W shall have six (6) months from the Effective Date of this JCO to submit to DEP the information that would be required to be submitted by a non-rail carrier entity pursuant to the applicable requirements of the APCA and its implementing regulations and twelve (12) months to install the air pollution control system that would be required of a non-rail carrier entity pursuant to the APCA after DEP states in writing that NYS&W's proposal is acceptable to it pursuant to the 2D Regulations. Notwithstanding the foregoing, NYS&W may, within ten (10) days of the Effective Date of this JCO, notify DEP of its intention to close the 5800 West Side Facility until such time as the 5800 West Side Facility complies with

N.J.A.C. 7:26-2D.1(d)7 and 8.  Should the NYS&W, after commencing activities to comply with N.J.A.C. 7:26-2D.1(d)7 and 8, fail to meet such deadlines at the 5800 West Side Facility, such Facility shall be closed until such time as the 5800 West Side Facility complies with N.J.A.C. 7:26-2D.1(d)7 and 8.

8.      DEP and NJMC agree that they will not assert that operations at the 94th St. Facility do not constitute transportation by rail carrier under the ICCTA unless the NYS&W and 94th St. Rail Transfer or its successors or assigns act in such a manner that is substantially and materially inconsistent with the 94th St. Contract, the NYS&W and 94th St. Rail Transfer or Total Waste enter into a new written agreement, or the 94th St. Contract is terminated and NYS&W enters into a new written agreement with another entity regarding the 94th St. Facility, and any such amendment or new agreement substantially and materially differs from the 94th St. Contract or the parties act in such a manner that is substantially and materially inconsistent with any such amendment or new agreement.  DEP and NJMC further agree that they will not assert that operations at the 5800 West Side Facility do not constitute transportation by rail carrier under the ICCTA unless the NYS&W and MHF or its successors or assigns act in such a manner that is substantially and materially inconsistent with the MHF Contract, NYS&W and MHF or its successors or assigns enter into a new written agreement, or the MHF Contract is terminated and NYS&W enters into a new written agreement with another entity regarding the 5800 West Side Facility, and any such amendment or new agreement substantially and materially differs from the MHF Contract or the parties act in such a manner that is substantially and materially inconsistent with any such amendment or new agreement .  A change in any of the following alone shall not constitute acting in such a manner that is substantially and materially inconsistent or constitute a

18

substantial and material difference as referenced above: (i) tonnage to be shipped, (ii) type(s) of solid waste handled, (iii) physical method(s) of waste handling, (iv) waste handling or transportation schedule, (v) hours of operation; (vi) rates charged by NYS&W; (vii) length of term; or (vii) name or ownership of such entity. Should DEP or NJMC assert at any time that operations at the 94th St. Facility or the 5800 West Side Facility do not constitute transportation by rail carrier under the ICCTA, then the foregoing shall act as an absolute defense to such assertion and to any relief DEP and/or NJMC may request based upon such assertion. Notwithstanding Paragraph 3 above, NYS&W further reserves its right to assert any and all defenses it may have to such assertion and any relief which DEP and/or NJMC may request based upon such assertion that operations at the 94th St. Facility or the 5800 West Side Facility do not constitute transportation by rail carrier under the ICCTA.

9.      Should NYS&W, when it is operating a Facility as a rail carrier facility, determine that it wishes to accept Type 10 solid waste, it shall give no less than sixty (60) days written notice of that intent to NJMC and DEP, and at the same time:

      a.   Provide DEP and NJMC with the following:

            i.   Detailed drawings and specifications regarding any changes to the Facility to accommodate Type 10 waste in compliance with N.J.A.C. 7:26-2D.1.

            ii.  A detailed report on how the Facility proposes to deal with environmental and public health and safety concerns associated with Type 10 waste.

            iii. A detailed description of the amount of Type 10 waste it proposes to accept, the source and composition of that waste, and copies of all

contracts with generators, haulers, shippers, loaders or others regarding the Type 10 waste proposed to be handled at the Facility.

    iv.  A detailed description of how NYS&W intends to comply with the requirements of N.J.A.C. 7:26-2D.1, with respect to Type 10 waste.

b.  NYS&W agrees that in seeking to implement, and in implementing, plans to operate the Facility as a rail carrier facility accepting Type 10 solid waste, it will, in addition to the requirements of this paragraph, comply in full with the Stipulation.

c.  Notwithstanding anything to the foregoing in this paragraph, NYS&W agrees that it will not seek to accept Type 10 waste at a Facility so long as the prospective operator of the Facility is pursuing plan inclusion, solid waste facility permitting, and A-901 approval for operations at the Facility.

## SETTLEMENT AMONG NYS&W, MHF, DEP AND NJMC REGARDING 5800 WEST SIDE FACILITY

10.    Within 90 days of the Effective Date of this JCO, MHF shall submit an administratively complete application for A-901 Approval to obtain a Broker License to arrange for shipments of solid and hazardous waste. The application for A-901 Approval shall be submitted to the New Jersey Division of Law, Attn: DAG Harley Williams. The New Jersey Division of Law agrees to use best efforts to promptly and expeditiously process the A-901 application. Should MHF be denied A-901 Approval and/or not obtain a Broker License, it shall cease all solid and hazardous waste brokerage activities at the 5800 West Side Facility.

11.     Should MHF be granted A-901 Approval and receive a Broker License, and DEP thereafter discover that MHF is conducting activities beyond solid and hazardous waste brokerage activities, DEP reserves its right to seek any and all relief against MHF through any enforcement action that DEP deems appropriate.

12.     Except as to the Air Handling System, within ninety (90) days of the Effective Date of this JCO, NYS&W shall submit to DEP and NJMC engineering designs, plans and specifications for the 5800 West Side Improvements, that are generally set forth in Exhibit C of this JCO, and any other capital improvements or modifications necessary to achieve compliance with N.J.A.C. 7:26-2D.1(d)2 and 3 in accordance with the requirements of Paragraph 7a . If DEP issues a notice of deficiency or request for additional information, DEP agrees to participate in a meeting with NYS&W and its engineers or other appropriate professionals within seven (7) business days following receipt of such notice of deficiency or request for additional information for the purpose of discussing the notice of deficiency or request for additional information and potential acceptable resolutions of the notice of deficiency or request for additional information. DEP agrees to deliver any notice of deficiency or request for additional information to the NYS&W by facsimile and regular mail. Construction of the 5800 West Side Improvements and any other capital improvements or modifications necessary to achieve compliance with N.J.A.C. 7:26-2D.1(d)2 and 3 in accordance with the requirements of Paragraph 7a, other than the Air Handling System, shall commence within ninety (90) days of receipt of DEP and NJMC approval and shall be complete within six (6) months of receipt of such approval.

13.     NYS&W shall submit a certification of construction to the Department within thirty (30) days of completion of all construction projects, by certified mail or hand delivery, which shall consist of written certifications from NYS&W and a licensed professional engineer

registered in the State of New Jersey, that the construction has been completed in accordance with approved designs. The written certifications shall be in conformance with the requirements of N.J.A.C. 7:26-2.4(e) and shall be accompanied with a set of "as built" construction drawing signed and sealed by the licensed professional engineer. DEP agrees to complete its review and act upon such certification of construction within thirty (30) days of receipt.

14.    In connection with the Air Handling System, within six (6) months of the Effective Date of this JCO, NYS&W shall submit to the DEP, for its review, the information that would be required to be submitted by a non-rail carrier entity for a registration statement and engineering design for the 5800 West Side Facility Air Handling System pursuant to the requirements of the SWMA, including but not limited to N.J.S.A. 13:1E-5, and its implementing regulations, N.J.A.C. 7:26-1.1 et seq., specifically including but not limited to N.J.A.C. 7:26-2.1 et seq. (this submittal will be referred to hereafter as the "NYS&W Design Submittal"). The NYS&W Design Submittal shall contain, or be accompanied by, a submittal of the information that would be required to be submitted by a non-rail carrier entity for an appropriate permit or permits at the 5800 West Side Facility, pursuant to the applicable requirements of the APCA and its implementing regulations. The specific mention of the APCA is without prejudice to any other requirements imposed by or arising under other applicable environmental statutes.

15.    In addition to the requirements of Paragraph 12, the NYS&W Design Submittal shall specifically address: (a) how the 5800 West Side Facility will be operated to handle both solid waste and hazardous waste; (b) what scales will be used for the solid waste operation handled; and (c) the tonnage and types of solid waste proposed to be handled.

16.    In connection with the submittal of the designs, plans and specifications as required by Paragraphs 12 and 15 and the NYS&W Air Handling System Design Submittal as

required by Paragraph 14, DEP agrees to use its best efforts to complete its review of the submissions within sixty (60) days of receipt. Such undertaking by the DEP, however, is contingent upon the NYS&W submitting complete submissions and fully responsive replies to any request by the DEP for additional information relating to the NYS&W Design Submittal within ten (10) days of any notice of deficiency or request for additional information issued by the DEP. The time for DEP review of the NYS&W submittals further shall be tolled for every day that NYS&W is late in any of these respects.

17.    If DEP or the NJMC issues a notice of deficiency or request for additional information, DEP and/or the NJMC agree to participate in a meeting with NYS&W and its engineers or other appropriate professionals within seven (7) business days following receipt of such notice of deficiency or request for additional information for the purpose of discussing the notice of deficiency or request for additional information and potential acceptable resolutions of the notice of deficiency or request for additional information. DEP agrees to deliver any notice of deficiency or request for additional information to NYS&W by facsimile and regular mail. Should DEP ultimately reject the NYS&W Design Submittal, DEP may initiate appropriate legal action, and NYS&W reserves all of its defenses should such action be instituted.

18.    DEP and NJMC acknowledge that the NYS&W may contract with a third party, including MHF, to construct/modify the Facility. DEP and NJMC agree that construction pursuant to such delegation alone shall not be deemed a violation of the SWMA or the HMRDA. NYS&W acknowledges and agrees that NYS&W as the owner and operator of the 5800 West Side Facility is responsible for all construction/modification of the 5800 West Side Facility, including construction/modification work that NYS&W delegates to any third party contractor, including MHF.

19.     MHF will pay all fees mandated by statutory and regulatory requirements for A-901 approval.

20.     Except as otherwise provided for hererin, all of NYS&W's operations at the 5800 West Side Facility shall be conducted in accordance with N.J.A.C. 7:26-2D.1 and N.J.A.C. 7:26G-7.4(g) and as provided for in this JCO, other applicable environmental law, and the final approved NYS&W Design Submittal.  NYS&W agrees that DEP may enforce violations of the requirement to conduct operations at the 5800 West Side Facility in accordance with the approved NYS&W Design Submittal by issuance of administrative orders, by seeking redress in state court, or by seeking enforcement of this JCO before this Court.  DEP may further enforce violations of environmental statutes and regulation in the fashion provided for in the applicable statute, or by seeking enforcement of this JCO before this Court.  NYS&W reserves all of its rights to defend against such enforcement, except as otherwise provided for herein.  NYS&W may seek enforcement of this JCO before this Court.

21.     Nothing in this JCO, the MHF Contract, MHF's application for A-901 Approval, MHF's application for a Broker License, any NYS&W submittal, or any response by DEP or the NJMC to those documents: (i) may be used against NYS&W in any other administrative or regulatory proceeding to which NYS&W is a party and which directly involves the issue of federal preemption, or (ii) shall be deemed an admission by NYS&W, or by MHF except that any statement made by MHF in any of the foregoing documents, or orally, may be used against MHF in any A-901 proceedings involving MHF.  However, any party may use any of the foregoing documents, or responses thereto (i) to rebut a material factual claim which reasonably appears to be contradicted by any of the foregoing documents, or responses by DEP or the

NJMC thereto; or (ii) if a court determines that the interests of justice mandate use of such documents or responses thereto.

22.    Nothing in this JCO, the MHF Contract, MHF's application for A-901 Approval, MHF's application for a Broker License, any NYS&W submittal, any approval of such application, any response by NJDEP or NJMC to any submittal or application or any actions or inaction pursuant to any submittal or approval shall be construed:

a.    to be an admission by NYS&W that the operation of the 5800 West Side Facility by NYS&W, its successors, assigns, affiliates, agents, or contractors is other than transportation by a rail carrier nor a waiver of any claim or defense raised by NYS&W in the Lawsuit or any other matter that the NJMC's, the DEP's or any other state, county or local government or governmental entity's regulatory powers are preempted by federal law;

b.    to be an admission by DEP and NJMC that the operation of the 5800 West Side Facility by NYS&W, its successors, assigns, affiliates, agents, or contractors is transportation by a rail carrier; and

c.    to require NYS&W, its successors, assigns, affiliates, agents, or contractors to obtain inclusion in any solid waste management plan, A-901 approval, or to obtain any other NJDEP, NJMC, or any other state, county or local government or governmental entity approval to operate the 5800 West Side Facility or any other truck to rail facility.

23.    NYS&W and MHF shall not construe any informal advice, guidance, suggestions or comments by DEP or the NJMC, or by any person acting on behalf of DEP or the NJMC, as

relieving NYS&W and/or MHF of any obligation to obtain written approvals as may be required herein or otherwise by law, unless such advice, guidance, suggestions, or comments by DEP and/or the NJMC are submitted in writing to NYS&W and/or MHF through a Deputy Attorney General specifically relieving NYS&W and/or MHF of a specified obligation.

24.     In addition to DEP's and NJMC's statutory and regulatory rights to enter and inspect in accordance with, among others, the provisions of N.J.S.A. 13:1D-9(d), N.J.S.A. 13:1E-9(a), and N.J.S.A. 13:17-6(f), and without prejudice to any position MHF or NYS&W may take, NYS&W shall allow DEP, the NJMC, and their authorized representatives access to the 5800 West Side Facility for the purpose of determining compliance with this JCO, the Stipulation, and applicable environmental law, and MHF shall not interfere with such access. NYS&W shall allow the NJMC and its authorized representatives access to the 5800 West Side Facility for the purpose of determining compliance with the HMRDA, and MHF shall not interfere with such access. Except as otherwise provided for herein, NYS&W and the NJMC reserve their respective rights and positions with respect to application of the HMRDA to NYS&W, except that NYS&W agrees to provide access to the 5800 West Side Property to NJMC and its authorized representatives pursuant to the Stipulation and as otherwise authorized by law, and MHF shall not interfere with such access.

25.     NYS&W shall give written notice of this JCO to its successor in interest prior to any transfer of ownership or any other interest or contractual right relating to the 5800 West Side Facility and shall simultaneously provide written proof to DEP and the NJMC that such notice has been given. MHF shall give written notice of this JCO to its successor in interest prior to any transfer of any interest or contractual right relating to the 5800 West Side Facility and shall simultaneously provide written proof to DEP and the NJMC that such notice has been given.

26.     DEP and the NJMC reserve all statutory and common law rights to require NYS&W to take additional remedial action should either determine that such action is necessary to protect human health, welfare, animal or plant life, or property or to prevent unreasonable interference with the enjoyment of life or property. Nothing in this JCO shall constitute a waiver of any statutory or common law right of DEP or the NJMC to require MHF and NYS&W to undertake such additional measures should DEP or the NJMC determine that such remedial measures are necessary. MHF and NYS&W reserve all defenses to any and all such claims.

27.     This JCO shall not be construed to affect or waive the claims of Federal or State natural resources trustees against any person for damages or injury to, destruction of, or loss of natural resources.

28.     Nothing in this JCO shall be construed to legalize activity which would otherwise be in violation of local, county, state, or federal law.

29.     Nothing in this JCO shall be construed to relieve NYS&W of its obligation, in doing construction work at the 5800 West Side Facility, to do so in conformance with environmental laws, including but not limited to the APCA and the Water Pollution Control Act, N.J.S.A. 58:10A-1 et seq. ("WPCA"), and their implementing regulations, and DEP and NJMC reserve their rights to seek appropriate relief and/or assess civil penalties for violations of same. NYS&W reserves any and all defenses thereto. Except as otherwise provided for herein, NJMC and DEP reserve their rights to seek to enforce the HMRDA, the Stipulation, and applicable environmental law against NYS&W and MHF; and except as otherwise provided for herein, NYS&W and MHF reserve any and all defenses thereto.

30.     Except as otherwise provided for herein, nothing in this JCO shall be construed to preclude DEP and NJMC from asserting that the further construction and/or operation of the

27

5800 West Side Facility is in violation of the SWMA, the APCA, the WPCA and/or their implementing regulations. MHF and NYS&W reserve their rights to raise any defenses thereto.

31.    Except as otherwise provided for herein, nothing in this JCO shall be construed to relieve MHF and NYS&W from complying with any measures or actions that may be required by any future changes in the law, whether by statute, regulation or binding judicial determination including but not limited to P. L. 2007, c. 311, the Recycling Enhancement Act. Except as otherwise provided for herein, nothing in this JCO shall be construed to impose compliance by MHF and NYS&W with any measures or actions that may no longer be required, in whole or in part, by any future changes in the law, whether by statute, regulation or judicial determination. Nothing in this JCO shall be construed as a waiver by DEP or NJMC of their right to enforce all requirements as applicable to NYS&W pursuant to any future changes in the law, or as a waiver by the MHF and NYS&W of any defenses to such enforcement. MHF and NYS&W reserve their rights to raise any defenses thereto.

**SETTLEMENT AMONG TOTAL WASTE, 94TH STREET RAIL TRANSFER, SCOTT EXCAVATING, NYS&W, DEP AND NJMC REGARDING PERMITTING OF PROPOSED SOLID WASTE FACILITY TO BE OPERATED BY TOTAL WASTE**

32.    If not already done, then within 30 days of the Effective Date of this JCO, Total Waste shall submit an administratively complete application for an amendment to the NJMC Solid Waste Management Plan ("94th St. Plan Amendment") to include the 94th St. Facility in the NJMC Solid Waste Management Plan to handle up to 850 tons of Types 13, 13C, and 27 of solid waste per day. All studies, reports, and information on which the application is based shall be prepared on the basis that the facility will operate at a maximum of 850 tons per day. Notwithstanding the foregoing, the 94th St. Plan Amendment shall seek authorization to

commence operations at a maximum of 750 tons per day. After a period of six months from the date operations commence, Total Waste may increase operations to a maximum of 850 tons per day, provided that Total Waste shall have submitted evidence to NJMC, and NJMC agrees, that it is in material compliance with all applicable laws and regulations regarding the operation of the 94th St. Facility. The application shall include a map and/or survey delineating the boundaries of the 94th St. Property on which the 94th St. Facility will be located. NJMC acknowledges that: (a) the construction and operation of the 94th St. Facility does not conform to the permitted uses applicable to the 94th St. Property, and (b) the construction of the 94th St. Facility is not in compliance with certain set-back and other use requirements. NJMC further acknowledges that such use and set-back requirements will not be a basis upon which NJMC will reject or delay Total Waste' application for the 94th St. Plan Amendment. NJMC agrees to deliver any notice of deficiency or request for additional information with respect to the 94th St. Plan Amendment application to Total Waste by facsimile and regular mail.

33.    If not already done, then within 30 days of the Effective Date of this JCO, Total Waste shall submit an administratively complete application for A-901 approval so that it may operate the 94th St. Facility. The New Jersey Division of Law agrees to use best efforts to promptly and expeditiously process the A-901 request for amended approval.

34.    If not already done, then within 30 days of the Effective Date of this JCO, Total Waste shall submit an administratively complete application (except for the 94th St. Plan Amendment) to the DEP for approval of a registration statement and engineering design for the 94th St. Facility to handle up to 850 tons of Types 13, 13C and 27 solid waste per day pursuant to the requirements of the SWMA, including but not limited to N.J.S.A. 13:1E-5, and its implementing regulations, N.J.A.C. 7:26-1.1 et seq., specifically including but not limited to

29

N.J.A.C. 7:26-2.1 et seq. (this application will be referred to hereafter as the "94th St. Permit Application"). All studies, reports, and information on which the application is based shall be prepared on the basis that the facility will operate at a maximum of 850 tons per day. Notwithstanding the foregoing, the 94th St. Permit Application shall seek authorization to commence operations at a maximum of 750 tons per day. After a period of six months from the date operations commence, Total Waste may increase operations to a maximum of 850 tons per day, provided that Total Waste shall have submitted evidence to DEP, and DEP agrees, that it is in material compliance with all applicable laws and regulations regarding the operation of the 94th St. Facility. The 94th St. Permit Application shall contain, or be accompanied by, an application for an appropriate permit or permits at the 94th St. Facility, pursuant to the APCA and its implementing regulations, the grant of which air permit Total Waste acknowledges is a prerequisite to grant of the 94th St. Permit. The specific mention of the APCA in connection with the 94th St. Plan Amendment and the 94th St. Permit Application is without prejudice to any other requirements imposed by or arising under other applicable environmental statutes.

35.    Notwithstanding the fact that at the time the 94th St. Plan Amendment application is made Total Waste (as the proposed operator of the 94th St. Facility) will not yet have obtained an amended A-901 approval, the NJMC agrees to review an administratively complete 94th St. Plan Amendment application on an expedited basis and to make best efforts to take final action on the 94th St. Plan Amendment application within 200 days of receipt of an administratively complete Plan Amendment application, subject to Paragraph 37 below. DEP represents that upon receipt of a proposed amendment to the NJMC Solid Waste Management Plan regarding the 94th St. Facility, it will make best efforts to take final action on such amendment within 60 days of receipt thereof, subject to Paragraph 37 below.

30

36.     Notwithstanding the fact that at the time the 94th St. Permit Application is made the 94th St. Facility will not then be included in the NJMC Solid Waste Management Plan, and Total Waste will not yet have obtained an A-901 approval, DEP agrees to review an administratively complete permit application on an expedited basis and to make best efforts to take final action on the permit application within 260 days of receipt. Total Waste acknowledges that no Permit may issue unless and until: (a) the 94th St. Facility is included in the NJMC Solid Waste Management Plan, and (b) Total Waste has received an amended A-901 approval to operate the 94th St. Facility. Such undertaking by the DEP is contingent upon Total Waste submitting an administratively complete 94th St. Permit Application (except for the 94th St. Plan Amendment), pursuant to Paragraph 34 above, within the timeframe indicated, and fully responsive replies to any request by the DEP for additional information relating to the application within ten (10) days of any notice of deficiency or request for additional information issued by the DEP. The time for DEP review of the 94th St. Permit Application shall be tolled for every day that Total Waste is late in any of these respects. It is the intention of the parties that if reasonably possible, final action by DEP and the NJMC on the 94th St. Permit Application and 94th St. Plan Amendment application will be taken within the time frames indicated. Operation of the 94th St. Facility as a solid waste facility by Total Waste under the terms of the 94th St. Permit and this JCO may commence only in accordance with the 94th St. Permit. Operation by Total Waste of the 94th St. Facility as a solid waste facility may not commence until Total Waste has received all of the permits and approvals necessary for operation as a solid waste facility.

37.     If DEP or the NJMC issues a notice of deficiency or request for additional information, DEP and/or the NJMC agree to participate in a meeting with Total Waste and its

engineers or other appropriate professionals within seven (7) business days following receipt of such notice of deficiency or request for additional information for the purpose of discussing the notice of deficiency or request for additional information and potential acceptable resolutions of the notice of deficiency or request for additional information. DEP and/or the NJMC agrees to deliver any notice of deficiency or request for additional information to Total Waste and the NYS&W by facsimile and regular mail.

38.     DEP and NJMC are aware of the use and location of the building on the lot, and that the use and location of the building are inconsistent with NJMC zoning regulations. Notwithstanding that inconsistency, DEP and NJMC agree that such inconsistency shall not be a basis upon which Plan Inclusion or a Permit will be denied.

39.     DEP and NJMC acknowledge that the NYS&W may delegate the performance of construction/modification of the Facility to Total Waste pursuant to agreement between NYS&W and Total Waste, a copy of which shall be provided to DEP prior to any such construction/modification.  DEP and NJMC agree that construction pursuant to such delegation alone shall not be deemed a violation of the SWMA or the HMRDA.  Total Waste acknowledges and agrees that all such construction performed by Total Waste pursuant to such delegation shall be in accordance with the Permit as ultimately issued, and Total Waste acknowledges that any such construction performed by it prior to issuance of a Permit shall be at Total Waste's risk should such construction not conform to the Permit as issued.

40.     Total Waste will pay all fees mandated by statutory and regulatory requirements including fees for the 94th St. Plan Amendment and the 94th St. Permit Application. The Permit fee shall be paid in installments based upon review milestones in such amounts and at such times as the Department sets consistent with standard Department practice.

41.     In connection with the 94th St. Facility, NYS&W, 94th Street Rail Transfer, Scott Excavating, Millenium and Total Waste agree that they will enter into a new or amended contracts within fifteen days of the Effective Date of this JCO providing that, if Total Waste obtains all permits, approvals and authorizations necessary to operate the 94th St. Facility, (a) Total Waste will operate the 94th St. Facility and (b) NYS&W will enter into an easement with Millenium to allow the portion of the 94th Street Facility which is situated on the NYS&W property to remain in its current location and be used in Total Waste's operation of the 94th St. Facility and will terminate all prior agreements relating to the NYS&W's operation of the 94th St. Facility, including but not limited to the 94th Street Contract and the NYS&W's lease of the 94th Street Property from Millenium.  NYS&W understands that such new or amended contracts, with confidential business information redacted, will be submitted by Total Waste to the NJMC and DEP as part of the 94th St. Plan Amendment application and the 94th St. Permit Application.  Should DEP or the NJMC determine that either or both need to review some or all of the redacted confidential business information, NJMC and DEP agree to limit their request for such information to the extent necessary for review of the 94th St. Plan Amendment application, and/or the 94th St. Permit Application, and to maintain the confidentiality of such information to the extent permitted by law.  The DEP and the NJMC reserve their right to challenge the designation of any business information as confidential.  NYS&W agrees to submit information in connection with Total Waste's application if required pursuant to A-901 but in the event of such demand, reserves all of its rights.  No such submission by NYS&W shall be deemed to derogate from NYS&W's rights as provided by Paragraphs 46 through 48 below.

42.     In connection with the 94th St. Facility, Total Waste shall comply with N.J.S.A. 13:1E-28.1 et seq., including but not limited to negotiating, and then paying, a host

community benefit to the Township of North Bergen. The Township of North Bergen shall be a third party beneficiary of this provision, with standing to seek its enforcement against Total Waste.

43.    NJMC agrees to provide the Township of North Bergen with copies of inspection reports and other documents as may be requested by the Township of North Bergen in connection with any application by Total Waste for building permits or a certificate of occupancy for the 94th St. Facility.

44.    All of Total Waste's operations at the 94th St. Facility shall be conducted in accordance with the 94th St. Permit, the provisions of the SWMA and its implementing regulations including but not limited to N.J.A.C. 7:26-2.1 et seq., other applicable environmental law including but not limited to the APCA and the WPCA, and shall be subject to all of DEP's statutory and regulatory powers, including but not limited to the power to order compliance and assess penalties for violations of environmental statute(s) or regulation(s). Total Waste expressly agrees that upon inclusion of the 94th St. Facility in the NJMC Solid Waste Management Plan, receipt by Total Waste of an amended A-901 approval, issuance by the DEP of the 94th St. Permit to Total Waste to operate the 94th St. Facility, DEP's regulatory powers with respect to Total Waste and its operation of the 94th St. Facility are not, and shall not be deemed to be, preempted by ICCTA.

45.    Total Waste hereby agrees that if and when the 94th St. Permit is issued, the operation of the 94th St. Facility by Total Waste as a solid waste facility will be and will constitute operation of a regulated facility subject to full regulation under the SWMA.

46.    Nothing in this JCO, the Total Waste A-901 Approval application, the 94th St. Plan Amendment application, or the 94th St. Permit Application, CPCN application or any

34

response by DEP or the NJMC to those applications, the 94th Street Plan Inclusion, and the

94th Street Permit, the new or amended contract between the NYS&W and Total Waste or the

easement from the NYS&W to Millenium: (i) may be used against NYS&W, 94th Street Rail

Transfer, Millenium, Total Waste or Scott Excavating in any other administrative or regulatory

proceeding to which any of them is a party and which directly involves the issue of federal

preemption, or (ii) shall be deemed an admission by NYS&W, or by 94th Street Rail Transfer,

Millenium, Total Waste or Scott Excavating except that any statement made by 94th Street Rail

Transfer, Millenium, Total Waste or Scott Excavating in any of the foregoing documents, or

orally, may be used against the maker of that statement in any A-901 proceedings involving the

maker of the statement.  However, any party may use any of the foregoing documents, or

responses thereto: (i) to rebut a material factual claim which reasonably appears to be

contradicted by any of the foregoing documents, or responses by DEP or the NJMC thereto; or

(ii) if a court determines that the interests of justice mandate use of such documents or responses

thereto.

47.     Nothing in this JCO, the Total Waste A-901 Approval application, the 94th St.

Plan Amendment application, the 94th St. Permit Application, CPCN application, any approvals

of such applications or any actions or inaction pursuant to those approvals, the new or amended

contract between NYS&W and Total Waste or the easement from the NYS&W to Millenium

shall be construed:

a.      to be an admission by NYS&W, 94th Street Rail Transfer, Millenium,

Total Waste or Scott Excavating that the operation of the 94th St. Facility

by NYS&W, its successors, assigns, affiliates, agents, or contractors is

other than transportation by a rail carrier nor a waiver of any claim or

35

defense raised by NYS&W in the Lawsuit or any other matter that the NJMC's, the DEP's or any other state, county or local government or governmental entity's regulatory powers are preempted by federal law;

b.  to require NYS&W, its successors, assigns, affiliates, agents, or contractors to obtain inclusion in any solid waste management plan, or to obtain any other DEP, NJMC, or any other state, county or local government or governmental entity approval to operate the 94th St. Facility or any other truck to rail facility; and

c.  to require NYS&W, its successors, assigns, affiliates, agents, or contractors to operate the 94th St. Facility in the same manner as Total Waste operates the 94th St. Facility.

48.  If Total Waste obtains the 94th St. Permit referenced in this JCO, and thereafter Total Waste or any successor to Total Waste ceases operations at the 94th St. Facility, and NYS&W assumes operational control of the 94th St. Facility, then nothing in this JCO shall be construed to prevent NYS&W, its successors, assigns, affiliates, agents or contractors from operating the 94th St. Facility, subject to NYS&W's agreement and obligation to operate the facility in conformity with the 2D Regulations, as set forth in this JCO, or from asserting at any time that the NJMC's, the DEP's or any other state, county or local government or governmental entity's regulatory powers are preempted except as stated in Paragraph 3 hereof.

49.  DEP and NJMC acknowledge that prior to the date of this JCO, they have engaged in: (i) meetings to discuss the 94th St. Facility, and (ii) ongoing inspections of the 94th St. Facility. DEP and NJMC further represent to NYS&W and Total Waste that as of the date of this JCO, neither the DEP nor the NJMC is aware of any facts or other information that

36

would prevent the inclusion of the 94th St. Facility in the NJMC Solid Waste Management Plan to handle up to 750 tons of Types 13, 13C and 27 of solid waste per day with the possibility of an increase to 850 tons per day upon demonstration of compliance with all permit and plan inclusion requirements at a capacity of 750 tons per day for a period of six months, and issuance of the 94th St. Permit to Total Waste to operate the 94th St. Facility to handle up to 750 tons of Types 13, 13C and 27 of solid waste per day with the possibility of an increase to 850 tons per day upon demonstration of compliance with all permit and plan inclusion requirements at a capacity of 750 tons per day for a period of six months. The ultimate determination of capacity is subject to full review of the complete 94th St. Permit Application.

50.    Total Waste shall not construe any informal advice, guidance, suggestions or comments by DEP or the NJMC, or by any person acting on behalf of DEP or the NJMC, as relieving Total Waste of its or his obligation to obtain written approvals as may be required herein or otherwise by law, unless such advice, guidance, suggestions, or comments by DEP and/or the NJMC are submitted in writing to Total Waste through a Deputy Attorney General specifically relieving Total Waste of a specified obligation.

51.    In addition to DEP's and NJMC's statutory and regulatory rights to enter and inspect in accordance with, among others, the provisions of N.J.S.A. 13:1D-9(d), N.J.S.A. 13:1E-9(a), and N.J.S.A. 13:17-6(f), and without prejudice to any position Total Waste or NYS&W may take in the event the 94th St. Permit is not issued to Total Waste for the 94th St. Facility, Total Waste and NYS&W shall allow DEP, the NJMC, and their authorized representatives access to the 94th St. Facility for the purpose of determining compliance with this JCO, the Stipulation, and applicable environmental law. Upon being authorized to operate the Facility, Total Waste shall allow the NJMC and its authorized representatives access to the

37

94th St. Facility for the purpose of determining compliance with the HMRDA. Except as otherwise provided for herein, NYS&W and the NJMC reserve their respective rights and positions with respect to application of the HMRDA to NYS&W, except that NYS&W agrees to provide access to the 94th St. Property to NJMC and its authorized representatives pursuant to the Stipulation and as otherwise authorized by law.

52.    Total Waste shall give written notice of this JCO to its successor in interest prior to its transfer of ownership or any other interest, including but not limited to leasehold, or arising under the 94th St. Contract, or arising under a new or amended contract with NYS&W, in the 94th St. Facility, and shall simultaneously provide proof to DEP and the NJMC that such notice has been given.

53.    DEP and the NJMC reserve all statutory and common law rights to require Total Waste and NYS&W to take additional remedial action should either determine that such action is necessary to protect human health, welfare, animal or plant life, or property or to prevent unreasonable interference with the enjoyment of life or property. Nothing in this JCO shall constitute a waiver of any statutory or common law right of DEP or the NJMC to require Total Waste and NYS&W to undertake such additional measures should DEP or the NJMC determine that such remedial measures are necessary. 94th Street Rail Transfer, NYS&W, Total Waste, Millenium and Scott Excavating reserve all defenses to any and all such claims.

54.    This JCO shall not be construed to affect or waive the claims of Federal or State natural resources trustees against any person for damages or injury to, destruction of, or loss of natural resources.

55.    Nothing in this JCO shall be construed to legalize activity which would otherwise be in violation of local, county, state, or federal law.

56.    Nothing in this JCO shall be construed to relieve Total Waste of its obligation, in doing construction work at the 94th St. Facility, to do so in conformance with environmental laws, including but not limited to the APCA and the WPCA and their implementing regulations, and DEP and NJMC reserve their rights to seek appropriate relief and/or assess civil penalties for violations of same.  Except as otherwise provided for herein, NJMC and DEP reserve their rights to seek to enforce the HMRDA, the Stipulation, and applicable environmental law against NYS&W; and, except as otherwise provided, NYS&W reserves any and all defenses thereto.

57.    Except as otherwise provided for herein, nothing in this JCO shall be construed to preclude DEP and NJMC from asserting that the further construction and/or operation of the 94th St. Facility is in violation of the SWMA, the APCA, the WPCA and/or their implementing regulations.  Total Waste and NYS&W reserve their rights to raise any defenses thereto.

58.    Except as otherwise provided for herein, nothing in this JCO shall be construed to relieve Total Waste and NYS&W from complying with any measures or actions that may be required by any future changes in the law, whether by statute, regulation or judicial determination, including but not limited to P. L. 2007, c. 311, the Recycling Enhancement Act. Except as otherwise provided for herein, nothing in this JCO shall be construed to impose compliance by Total Waste and NYS&W with any measures or actions that may no longer be required, in whole or in part, by any future changes in the law, whether by statute, regulation or binding judicial determination.  Nothing in this JCO shall be construed as a waiver by DEP or NJMC of their right to enforce all requirements as applicable to NYS&W pursuant to any future changes in the law, or as a waiver by Total Waste and NYS&W of any defenses to such enforcement.  Total Waste and NYS&W reserve their rights to raise any defenses thereto.

**GENERAL PROVISIONS**

59.    Except as otherwise provided herein and subject to the terms of this JCO, the State fully, finally and completely remises, releases and discharges NYS&W, SBSI, MHF, 94th Street Rail Transfer, Millenium, Scott Excavating, and Total Waste, as well as their respective officers, directors, shareholders, partners, members, employees, agents and successors and assigns from any and all liabilities and claims in connection with the AONOCAPA, or any other liability, claim or cause of action arising under the SWMA and the Solid Waste Utility Control Act, N.J.S.A. 48:13A-1 et seq., from or relating to the operations, activities or conditions of the Facilities (and, as to the NYS&W and SBSI, any truck to rail facility listed in the AONOCAPA not included in the term "Facilities") that occurred prior to the Effective Date of this JCO, and known by, or that should have been known by, DEP or the NJMC, including but not limited to claims for penalties and injunctive relief, except to enforce the terms of this JCO.  All parties hereto acknowledge and understand that the releases given in the preceding sentences do not extend to any claims that the State may seek to assert arising from any future breaches of this JCO or future violations of law or to any claim that the State may seek to assert for declaratory and/or injunctive relief for specific performance of any provision of this JCO.  NYS&W, Total Waste, Millenium and MHF further acknowledge and understand that as NJMC is authorized to issue notices of violation only to the property owner, any future notices of violation issued by NJMC shall be issued to same.

60.    The parties agree not to contest the authority or jurisdiction of the Court to enter this JCO.  The parties further agree not to contest the terms or conditions, or the enforceability of this JCO, except as to interpretation of such terms and conditions, in any action brought by any party to enforce the provisions of this JCO.

40

61.     If any provision of this JCO or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this JCO or the application of such provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby and each provision of this JCO shall be valid and enforced to the fullest extent permitted by law.

62.     Should an Act of Congress become a law that requires the NYS&W to obtain state permits or approvals to operate the Facilities (the "New Law"), the timeframes provided for in this JCO for Total Waste and each prospective operator at any other Facility for which an Administrative Consent Order ("ACO") has been entered shall remain effective. Further, the NYS&W shall not be obligated to simultaneously undergo the State solid waste permit process, so long as the NYS&W and the prospective operator of a Facility remain in material compliance with this JCO or ACO as the case may be and such prospective operator is pursuing all necessary approvals in accordance with the applicable JCO and/or ACO. If, within eighteen months of the Effective Date of this JCO or the ACO, as the case may be, a prospective operator is denied approvals, withdraws from the approval process or, having obtained approvals ceases operations at a Facility, NYS&W shall have six (6) months from the date of denial, the date of withdrawal or the date NYS&W recommences operation, whichever is later, to submit its plan amendment, A-901 and permit applications, to the extent required by the New Law, and the timeframes for review by DEP and, if the Facility is in the HMD, NJMC, shall be the same as those set forth in this JCO or ACO as the case may be. As to the 5800 West Side Facility, NYS&W shall have six (6) months from the effective date of the New Law or the length of time provided by the New Law, whichever is longer, to submit its plan amendment, A-901 and permit applications, to the extent required by the New Law and the timeframes for review will be the same as apply to the

41

submissions of Total Waste pursuant to this JCO.  Should any prospective operator abandon its

plan inclusion application after the effective date of the New Law, the DEP and, if the Facility is

in the HMD, NJMC, agree that so long as a denial of such plan inclusion application has not

issued, the NYS&W may assume the prospective operator's application for plan inclusion as its

own and continue the application process, in its own name, subject to the right of DEP and, if the

Facility is in the HMD, NJMC, to request additional information as necessary relating to the

NYS&W.  Should any prospective operator abandon its solid waste facility permit application

after the effective date of the New Law, the DEP agrees that so long as a denial of such permit

application has not issued, the NYS&W may assume the pending solid waste facility permit

application and continue the application process, in its own name, subject to the right of DEP

and, if the Facility is in the HMD, NJMC, to request additional information as necessary relating

to the NYS&W.

63.     The parties hereto acknowledge that this JCO in no way addresses the disputes

pending before the Office of Administrative Law in Docket No. DVAUS02732-2007S.

64.     The Lawsuit is hereby dismissed with prejudice.

65.     This JCO shall be effective upon signature by the Court, which date is herein

referred to as the "Effective Date".


Date: ~~October~~ _Nov. 3_____, 2008


_____
Honorable Katharine S. Hayden, U.S.D.J.

Plaintiff Department of Environmental Protection consents to the form and entry of the within order.

Date:   October _____ 2 3 _____, 2008

Anne Milgram
Attorney General of New Jersey
Attorney for Department of Environmental
Protection and New Jersey Meadowlands Commission

By: _____
Kevin P. Auerbacher
Deputy Attorney General

Plaintiff New Jersey Meadowlands Commission consents to the form and entry of the within order.

Date:   October _____ 2 3 _____, 2008

Anne Milgram
Attorney General of New Jersey
Attorney for Department of Environmental
Protection and New Jersey Meadowlands Commission

By: _____
Kevin P. Auerbacher
Deputy Attorney General

Defendant The New York, Susquehanna and Western Railway Corporation consents to the form and entry of the within order.

Date:    October ___22___, 2008

Attorney for The New York, Susquehanna and Western Railway Corporation

Wolff & Samson PC

By: _____
        John A. McKinney, Jr., Esq.

Defendant MHF Logistical Solutions, Inc., consents to the form and entry of the within order.

Date:    October _____22_____, 2008

Attorney for MHF Logistical Solutions, Inc.

Scarinci & Hollenbeck, LLC

By:_____
                John M. Scagnelli, Esq.

Defendant X-Press Rail Transfer, LLC d/b/a 94th Street Rail Transfer, LLC, consents to the form and entry of the within order.

Date: October _____22____, 2008

Attorney for X-Press Rail Transfer, LLC d/b/a
94th Street Rail Transfer, LLC

Riker, Danzig, Scherer, Hyland, Perretti LLP

By:_____
            Samuel P. Moulthrop, Esq.

Total Waste Services, Inc., consents to the form and entry of the within order.

Date:   October _____22_____, 2008

Attorney for Total Waste Services, Inc.

Riker, Danzig, Scherer, Hyland, Perretti LLP

By:_____
Samuel P. Moulthrop, Esq.

Millenium Resource Recovery, Ltd., consents to the form and entry of the within order.

Date:    October _____, 2008

Attorney for Millenium Resource Recovery, Ltd.

Riker, Danzig, Scherer, Hyland, Perretti LLP

By:_____
      Samuel P. Moulthrop, Esq.

Scott Excavating, L.L.C., consents to the form and entry of the within order.

Date:   October _____, 2008

                              Attorney for Scott Excavating, L.L.C.

                              Riker, Danzig, Scherer, Hyland, Perretti LLP

                              By:_____
                                   Samuel P. Moulthrop, Esq.